Filed 11/4/15  Page v. Starline Tours of Hollywood CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| CURTIS PAGE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>STARLINE TOURS OF HOLLYWOOD, INC.,<br><br>    Defendant and Respondent. | B251359<br><br>(Los Angeles County<br>Super. Ct. No. BC462882) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly E. Kendig, Judge.  Affirmed.

Curtis Page, in pro. per., for Plaintiff and Appellant.

Welter Law Firm, Eric A. Welter and Laura B. Thomasian for Defendant and Respondent.

_____

# INTRODUCTION

Curtis Page appeals from a judgment of dismissal following an order granting summary judgment in favor of his former employer Starline Tours of Hollywood, Inc.[1] He asserts there were triable issues of material fact and the court erred in granting summary judgment and denying his motion for a new trial.  We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

## A.  *The Complaint*

The complaint alleged Page was an employee of Starline, which is subject to the California Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.).  Page's complaint contained two causes of action:  "Harassment & religion orientation Discrimination" (FEHA based claims) and "Tortuous [*sic*] Discharge in Violation of Public Policy."  His complaint set forth allegations of racial and religious discrimination, harassment, retaliation and wrongful discharge.  Page sought compensatory and exemplary damages as well as attorney's fees.

Page alleged he initially worked at Starline's Hollywood facility without incident, but after about three months, Page became the target of "inappropriate blatant harassment."  Page described an incident where he believed he was harassed based on a

---

[1]     Page actually appealed from the court's order denying his motion for a new trial.  "'[A]n order denying a motion for new trial is not independently appealable and may be reviewed only on appeal from the underlying judgment.'"  (*Pacific Corporate Group Holdings, LLC v. Keck* (2014) 232 Cal.App.4th 294, 302.)  As noted by Starline, we may construe the notice of appeal "to be an appeal from the underlying judgment when it is reasonably clear [that] appellant intended to appeal from [that] judgment and the respondent would not be misled or prejudiced."  (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 23, fn. omitted.)  We so construe Page's notice of appeal and find Starline was not prejudiced despite its contention it was not able "to adequately counter-designate the record on appeal."

manager belittling him over a speaker phone in the presence of a passenger on October 7, 2008. Page complained to Starline's owner about the "blatant harassment" and thereafter experienced retaliation.

Page alleged he "had no training in pulling in and out of hotel parking lot[s]," and on October 9, 2008, he misjudged how close he was to a hotel billboard and accidentally scraped the van he was driving. Page notified his supervisor and continued with his regular driving that day. Upon his return to Starline's facility, Page's supervisor instructed Page to take a drug test and informed Page he was suspended for two weeks because he caused damage to the van.

Page alleged several ways Starline harassed him at various times through June 2009. In February 2009, he was suspended for one day for failing to work on a weekend even though Starline knew he could not work on weekends because of his religious beliefs. In March 2009, he was sent home for being late to work after he had informed the manager that he was late because of traffic. In June 2009, Page was again suspended for two weeks for a "minor scrap[e]" on the side of the van even though "[n]o real damage was done."

Eventually, on July 6, 2009, despite having received no notice, Page alleged he was wrongfully terminated based on his race and religion and in retaliation for complaining about harassment. Page also alleged he was wrongfully terminated three days later, on July 9, 2009, when Starline tried to "cover up" the failure to follow "their own company policy."

Page attached to his complaint his Department of Fair Employment and Housing (DFEH) complaint of discrimination filed June 3, 2010 wherein Page stated that he had been "[h]arassed and suspended . . . for two weeks for accidents (10/08/2008, 6/10/2009), [h]arassed and suspended . . . for refusing to work on a weekend due to [his] religion (02/2009), [h]arassed, yelled at . . . , and sent . . . home for being late (3/2009), [a]nd wrongfully terminated . . . (7/9/09)." Page asserted that Starline's actions were "because of [his] race (African-American), religion (Baptist), and in retaliation for refusing to pay

3

for damages incurred in the accidents." Page also attached to his complaint a copy of his right-to-sue letter from DFEH.

**B.** *Motion for Summary Judgment and/or Summary Adjudication*[2]

Starline moved for summary judgment, or in the alternative, summary adjudication on 28 issues. Page opposed the motion and argued improper notice, insufficient separate statement, inadmissible evidence, false testimony and evidence Page believed established triable issues of material fact.

The court granted Starline's motion for summary judgment. In a detailed order, the court found that Starline demonstrated no triable issues of material fact on all 28 issues it raised through its motion. The court also rejected Page's untimely notice argument.

The court found Page was precluded from proceeding on any acts prior to June 3, 2009 because he filed his DFEH complaint on June 3, 2010. As the only alleged act of religious discrimination and related harassment occurred in February 2009, Page's religious discrimination and related harassment claims were barred.

The court determined Starline met its burden of demonstrating Page was not performing competently because he was in two preventable accidents within one year and he was terminated based on company policy, a non-discriminatory reason. Page, according to the court, failed to undermine Starline's legitimate non-discriminatory reason for his termination.

The court also determined that any alleged harassment was not sufficiently severe or pervasive such that it created an abusive environment. Page admitted that one comment by a supervisor did not offend him and that the "two to three unspecified comments by [his supervisor, Ms.] Slaughter, over the course of [Page's] 11[-]month employment, does not show a concerted pattern of harassment of a repeated, routine, or a

---

2      Even though the hearing was reported, Page elected to proceed in this court without the reporter's transcript.

4

generalized nature; rather it shows 'occasional' or 'sporadic' events, and is not enough to constitute harassment."

The court noted that Page's retaliation claim was based on his refusal to pay for damages he caused to Starline's vans and such activity was not protected activity under FEHA. Further, the court found that his supervisor, the person responsible for terminating Page's employment, could not have retaliated against Page because she was unaware that Page had complained to Starline's owner about her alleged harassment.

Finally, the court determined Page would have been terminated in any event based on evidence Starline acquired after his termination. Page did not disclose to Starline he had been deemed "medically unable to drive" in a worker's compensation case against a former employer on the date of his first accident or that his license had been suspended six days before he was terminated.

## C. *Motion for a New Trial*

Page timely filed a notice of intention to move for a new trial and a memorandum of points and authorities in support of his motion. Page claimed that the motion for summary judgment was granted "not because credible and admissible evidence does not exist, or for lack of legal bases for Page['s] claims," but because of clerical errors and evidence that had mysteriously been removed from his filings. Page further asserted the court should have given him additional time to submit evidence.[3]

In his motion for a new trial, Page argued that Starline was given five additional days to file a reply to his opposition to the summary judgment motion. Page contended the alleged "error was fatal to Page['s] entire lawsuit." Page also asserted "[t]he verdict [was] contrary to the law," "[t]he verdict [was] contrary to the evidence," the court erred in not allowing Page time to "resubmit the evidence that mysteriously disappear[ed] from the Court," the court should have permitted Page to conduct more discovery, there was a

---

[3] The motion for a new trial also requested that Page be permitted to amend the complaint to assert additional causes of action and to add a new defendant.

false statement in evidence offered against him, and the court erred in sustaining evidentiary objections to his declaration.

The court denied Page's motion for a new trial. The court found Page had not made a sufficient showing for a continuance based on the need for additional discovery. The court noted that Page had not propounded any discovery, did not subpeona any records and did not depose any Starline witnesses. According to the court, any evidence needed by Page to oppose the summary judgment motion could have been obtained with reasonable diligence.

The court further found that there was no legal error or irregularity in the proceedings. The court determined that the evidence Page claimed disappeared was not attached to his late filed opposition papers, and Page had been afforded with the statutory time to oppose the summary judgment motion.

Finally, as to the evidentiary objections, the court found no error. The court noted that Page's complaint was merely that he received the rulings on the objections only two days before the hearing, not that the rulings incorrectly excluded admissible evidence.

**DISCUSSION**

**A.** *Page's Summary Judgment-Related Claims*

Page has abandoned his racial discrimination and related harassment claims on appeal. He asks that this court focus on his religious discrimination and related harassment, retaliation and wrongful discharge claims.

Page apparently contends there are triable issues of material fact that should have precluded the court from granting summary judgment. Page has "narrow[ed] his appeal" to those issues rather than requiring us to "wade through every argument brought in his complaint." Page asserts that the disputed material facts concern the issue of whether the alleged legitimate reasons for his termination were pretextual.

As we understand his argument, Page first asserts his manager, Gwen Slaughter, was inaccurate in her testimony and she knew Page had been hired with the

6

understanding he would not have to work on weekends to accommodate his religious practices. He also contends his two suspensions for minor accidents were inconsistent with company policy, his job performance was not poor and he was not required to pay for any damage he caused to the vans. Finally, Page believes his wrongful termination is evident given Starline terminated him on three different dates in July 2009.

Page is correct that the trial court's order on a summary judgment motion is reviewed de novo. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) "'[I]t is axiomatic that we review the trial court's rulings and not its reasoning.' [Citation.] Thus, a reviewing court may affirm a trial court's decision granting summary judgment for an erroneous reason. [Citation.]" (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.)

Starline has asked that we deem Page's appeal abandoned because he "fails to articulate any pertinent or intelligible legal argument in support of the appeal in [the] opening brief." While we agree Page's arguments are fairly difficult to decipher, we nonetheless address his claims as we understand them.

As to Page's religious discrimination and harassment claims, Page's sworn testimony at his deposition established the claims were based solely on his one suspension occurring in February 2009. Based on Page's own testimony and his DFEH complaint, Page is precluded from proceeding on his religious discrimination and harassment claims as he did not timely exhaust his administrative remedies by filing his June 2010 DFEH complaint within one year of the alleged discriminatory acts.[4] (Gov.

---

[4] Page testified at deposition that the February 2009 suspension was the only time he was discriminated against or harassed because of his religion. Further, Page responded to Starline's undisputed material fact that other than February 2009 "no other acts of religious discrimination or harassment occurred during his employment" as follows: "Undisputed no other acts of religio[u]s discrimination[] or har[ass]ment occurred during his employment base[d] on his religio[n]." Page also did not dispute facts offered by Starline to support its position that any religious harassment was not severe or pervasive. The facts offered were that Page's supervisor was of the same religion and no employee of Starline ever made a comment about his religion.

7

Code, § 12960, subd. (d) ["[n]o complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice . . . occurred"].) As his claim is time barred, facts he offers do not create triable issues of material fact and do not demonstrate the court erred in granting Starline's summary judgment motion.

As to Page's job performance and his preventable accidents, Page did not dispute that Starline's safety manual states: "Any driver who has [two] preventable accidents in a [three-]year period will lose their safety clearance."[5] While Page disputed Starline's policy of terminating drivers who lose their safety clearance because of two preventable accidents, Page did not cite to any evidentiary support for his position. Instead, he disputed that Starline had such a policy because he was never told of it. He also did not dispute that both of his accidents were preventable and resulted in over $4,000 and $1,000 in damage.[6] Without evidence from Page to dispute the proffered legitimate non-discriminatory reason for his termination, Page did not demonstrate the court erred in granting Starline's summary judgment motion.[7] (*Guz v. Bechtel National, Inc.*, *supra*, 24 Cal.4th at pp. 356-357 [if employer makes showing of non-discriminatory reason for termination, presumption of discrimination disappears and plaintiff must show pretext or other evidence of discriminatory motive].)

Finally, Page's remaining argument and the facts he alleges are not helpful to Page. That there was confusion about the date of Page's termination does not establish a triable issue of material fact. Finally, without a cogent argument, we cannot determine

---

[5] Page included this policy in the company policy manual he attached to his complaint.

[6] Page did not dispute that he caused damage to Starline's van. Instead, he disputed what he hit (a billboard instead of a hotel) while driving the van.

[7] In response to material undisputed facts on the issue of pretext, Page disputed some facts because he had "not done his discovery to oppose." At times Page disputed facts but offered no contrary evidence. On those occasions, Page stated: "Disputed for there is [no] substantial evidence to support this part of the policy."

8

that whether Page was asked to pay for damage from the accidents is relevant to the court's decision on Starline's summary judgment motion.

**B.** *Page's Other Claims*

Throughout his opening brief, Page raises a number of claims of "prejudicial reversible error that substantially affect [his] rights and obligations to a procedural fairness which, if uncorrected would result in a miscarriage of justice and which justifies reversing a judgment in the [c]ourt below even if the error was not objected to in the lower [c]ourt." (Bold omitted.) We disagree with Page's claims.

Page contends the trial court committed reversible error when it briefly continued the hearing on the summary judgment motion because it had not received Starline's reply. Page claims that Starline was given an additional five days to file its reply. Starline's response was timely filed and served on April 19, 2013, seven days prior to the April 26 hearing date. (Code Civ. Proc., §§ 437c, subd. (b)(4), 1005, subd. (c).) The brief continuance allowed the court to obtain and review Starline's timely filed and served reply papers. It appears that although the reply had been timely filed, it had not been delivered to the courtroom by court personnel in time for the hearing.

Page also asserts the court permitted Starline more than 30 days to answer his complaint by "alleging erroneously a failure to file Proof of Service of the Summons and Complaint." Page claims that the court's notice "was to give[] [Starline] more time to answer." Page has made no showing that the court's notice, even if it did provide Starline with additional time to answer, was prejudicial. No such prejudice appears in the record and Page has not identified any prejudice he suffered based on the court's notice.

Page complains that two "key documents" relating to a motion to quash were not included in the clerk's transcript. This exclusion, in his view, warrants reversal. Page, however, did not designate the documents in his notice designating record on appeal, nor did he include the documents in his motion to augment the record. While it appears that these two documents are not germane to the issues on appeal, Page does not explain how his failure to include the documents for his appeal is the result of any court error.

9

Finally, Page's argument that the court erred in denying his motion for a new trial repeats much of his claim of error on the summary judgment motion. Page believes he has set forth "manifest errors of law" that required the court to grant his motion. He asserts that the court's decision was not supported by evidence in the record, violates federal rules and was based on disputed facts. We disagree for the reasons set forth herein.

## DISPOSITION

The judgment is affirmed. Starline shall recover its costs on appeal.

BECKLOFF, J.[*]

We concur:

PERLUSS, P. J.

SEGAL, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.